IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BANJOSA HOSPITALITY, LLC, a Colorado limited liability company, | CV 17-152-BLG-TJC |
| Plaintiff, | **ORDER** |
| vs. | |
| HISCOX, INC., | |
| Defendant. | |

Plaintiff Banjosa Hospitality, LLC ("Banjosa") brought this action seeking a declaratory judgment that Defendant Hiscox Insurance Company, Inc. ("HICI") [1] breached its duty to defend and indemnify Banjosa's assignor, Scott Blumfield ("Blumfield"), in an underlying lawsuit, and is now estopped from denying coverage. (Doc. 1-2 at 8.)  Banjosa also asserts claims for violations of Montana's Unfair Trade Practices Act, breach of contract, breach of the implied covenant of good faith and fair dealing, and common law bad faith.  *Id*. at 8-12.

---

[1] Defendant Hiscox Insurance Company, Inc. was erroneously named as "Hiscox, Inc." when Plaintiff brought this action. However, Defendant has acknowledged it is the intended Defendant in this action. (Doc. 1.)

Pending are the parties' cross motions for summary judgment.[2]  (Docs. 15,

34.)  The motions are fully briefed and ripe for decision.

 Having considered the parties' arguments, and for the following reasons, the

Court orders that Banjosa's motion be **DENIED** and that HICI's motion be

**GRANTED**.

## I.     BACKGROUND

### A.     Factual Background

On February 2, 2013 Banjosa entered into a Commercial Buy-Sell

Agreement ("Agreement") with LPCHAT, LLC ("LPCHAT") seeking to purchase

real property in Livingston, Montana.  (Doc. 27 at 2.)  Blumfield, an employee of

Catalyst Real Estate Solutions, LLC ("Catalyst"), served as Banjosa's broker for

the proposed sale.  *Id.*  Banjosa alleges that Blumfield breached his legal duties by

failing to perform functions material to the Agreement, thereby exposing Banjosa

to liability.  (Doc. 27 at 2-3.)  As a result, the purchase was not completed and

Banjosa suffered damages.  (Doc. 27 at 3.)

---

[2] Parties also filed a Joint Request for Hearing on the cross-motions for summary
judgment.  (Doc. 35).  The Court finds oral argument is not necessary to decide the
motions as the parties have fully briefed the cross-motions for summary judgment.
Accordingly, the motion is **DENIED** as **MOOT**.

At the time the Agreement was signed, Catalyst and Blumfield were insured under a Professional Liability Insurance Policy ("the Policy"). (Doc. 27 at 3-4.) The Policy was issued by HICI for the period of November 15, 2012 to November 15, 2013 ("Policy Period"). (Doc. 27-4.)

On February 20, 2014, LPCHAT filed a lawsuit against Banjosa, alleging breach of the Agreement. (Doc. 27 at 5.) Banjosa answered on April 24, 2014 and brought a third-party claim ("the Claim") against Blumfield. *Id.*

On May 8, 2014, Blumfield tendered his defense to HICI. (Doc. 27 at 5.) HICI denied a defense and coverage, claiming the Policy was a claims-made-and-reported policy. Because the Claim was not made and reported within the Policy Period, HICI determined there was no coverage. *Id.* Blumfield tendered his defense to HICI again on April 7, 2016, and HICI denied a defense and coverage for the same reasons. (Doc. 27 at 5-6.)

On April 21, 2016, Blumfield informed HICI he intended to enter a stipulated judgment as to all claims against him which would "include confession of judgment . . . as well as an assignment to Banjosa of Blumfield's claims against [HICI]." (Doc. 17-8; Doc. 27 at 6.) Judgment was subsequently entered against Blumfield accordingly on January 23, 2017 in Montana state court (Doc. 17-9; Doc. 27 at 6), and Blumfield assigned his rights against HICI to Banjosa. (Doc. Doc. 27 at 7.)

B.     Procedural Background

On April 3, 2017, Banjosa brought this declaratory judgment action against HICI in the Montana Sixth Judicial District Court, Park County, Montana. (Doc. 4.) On November 15, 2017, HICI removed the case, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1 at 3.)

On December 8, 2017, Banjosa filed a motion for summary judgment, contending that HICI wrongfully refused to defend its insured under the Policy. Banjosa argues that judgment should be entered in its favor without the necessity of an analysis of coverage under the Policy, because HICI was placed on notice that the Policy was implicated, triggering the duty to defend. Even if coverage is to be analyzed, however, Banjosa contends that the claim is covered under the Policy provisions. At the very least, Banjosa argues, the Policy is ambiguous, requiring that it be construed against HICI and in favor of coverage. Banjosa seeks recovery in the amount of the underlying judgment, together with defense costs, attorney fees, and prejudgment and postjudgment interest. (Doc. 16.)

On March 22, 2018, HICI filed a cross-motion for summary judgment. (Doc. 34.) HICI argues it did not breach its duty to defend because no coverage existed under the Policy. (Doc. 26 at 6.) HICI maintains the Policy is unambiguously a claims-made-and-reported policy, and no claim was made or reported within the Policy period. (Doc. 26 at 15.)

## II.     APPLICABLE LAW

### A.     Summary Judgment Standard

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted when the evidence presented is so conclusive that one party must prevail. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When parties file cross-motions for summary judgment, the Court reviews each motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

///

///

B.    Application of Montana Law

The Court's jurisdiction over this action is based on diversity of citizenship. Therefore, the Court must apply the substantive law of Montana. *In re Cty. of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015). Federal courts "are bound by the pronouncements of the state's highest court on applicable state law." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir. 2003).

It is well-settled in Montana that an insurer's "duty to defend arises when a complaint against an insured alleges facts, which if proved, would result in coverage." *Tidyman's Mgmt. Services, Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) (*citing Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). In comparing allegations of liability with policy language "to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, 90 P.3d at 385. The "fundamental protective purpose of an insurance policy," paired with the insurer's obligation to provide a defense, require coverage exclusions to be narrowly construed. *Id*. Therefore, the insurer must "construe the factual assertions from the perspective of the insured." *Id.*

The duty to defend arises from the language of the policy. Without coverage under the policy terms, no duty exists. *RQR Development, LLC v.*

*Atlantic Cas. Ins. Co.*, 2014 WL 6997935, *2 (D. Mont. 2014) (citing *Grimsrud v. Hagel*, 119 P.3d 47, 53 (Mont. 2005). However, "[u]nless there exists an unequivocal demonstration that the claim against the insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples*, 90 P.3d at 385.

If an insurer ultimately fails to defend the insured, "it does so at its peril" because if its failure is unjustifiable and coverage is found, "the insurer is estopped from denying coverage and becomes liable for defense costs and judgments." *Tidyman's*, 330 P.3d at 1149. Therefore, the Montana Supreme Court has suggested "the prudent course of action is to defend the insured under a reservation of rights and file a declaratory judgment action to discern coverage." *Id*. The Montana Court has also adopted the rule that "a pretrial stipulated judgment may be enforceable against the defendant's liability insurer if the insurer breaches its contractual obligation to defend the insured"; the insured will not be punished for justifiably attempting to limit her liability. *Id.* at 1150.

## III. DISCUSSION

Banjosa initially argues that no coverage analysis is necessary to find a breach of HICI's duty to defend. Relying on *Tidyman's*, 330 P.3d 1139, Banjosa contends the relevant question is not whether there is coverage under the Policy, but whether the complaint against Blumfield placed HICI on notice that the Policy was

potentially implicated. If so, Banjosa argues, HICI had a duty to defend, and "it is simply too late to argue about coverage." (Doc. 16 at 9.) The Court disagrees.

In *Tidyman's*, the insurer initially acknowledged that its policy was implicated and provided a defense; it later concluded that an exclusion precluded coverage and withdrew its defense; and it then reversed its position and again agreed to defend under a reservation of rights. *Tidyman's*, 330 P.3d at 1150. Under those circumstances, the Montana Supreme Court found the insurer itself recognized that the policy was potentially implicated and it was required to provide a defense. The Court thus found "no need for further analysis to conclude the duty to defend was invoked." *Id.* at 1151. Consequently, under *Tidyman's*, if an insurer acknowledges potential coverage, the policy is implicated, and a coverage analysis determining whether the duty to defend is triggered is not needed.

That is not the situation here. HICI has not taken multiple, conflicting coverage positions. HICI has not acknowledged potential coverage. Instead, it wholly denied a defense and indemnity on May 21, 2014, and again on April 7, 2016. (Doc 17 at 4.) Therefore, *Tidyman's* rationale for not engaging in a coverage analysis does not apply here. *See RQR Development, LLC*, 2014 WL 6997935, *4 (D. Mont. 2014) (*Tidyman's* is inapplicable where the insurer "has not taken multiple actions to recognize potential coverage; instead, [it] declined coverage after tender of the claim and has not since changed its position.").

Accordingly, the Court must analyze the coverage provisions of the Policy, and determine whether HICI has unequivocally demonstrated that the claim against Blumfield did not fall within the Policy's coverage.  *Staples*, 90 P.3d at 385.

HICI denied coverage because it did not receive notice of the claim within the Policy Period.  The timeliness of notice under an insurance policy depends on whether it is an "occurrence" policy or "claims-made" policy.  *Schleusner v. Continental Cas. Co.*, 102 F.Supp.3d at 1151.  An occurrence policy covers events that occur during the policy period, regardless of when the claim is actually made or reported to the insurer.  *Id.* at 1151-52.  Conversely, coverage under a claims-made policy is "determined by claims made within the policy period, regardless of when the events that caused the claim to materialize first occurred."  *Id.* at 1152.  Claims-made policies also include "claims-made-and-reported" policies, which require that claims be made and reported to the insurer by a specific date; "notice is the event that actually triggers coverage."  *Id.*  (quoting *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 957 (9th Cir. 2002).  Claims-made policies were "specifically developed to limit the insurer's risk by placing a temporal limitation on coverage."  *Id.* (citing *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 688 (Cal. 1995).

HICI argues the Policy is unequivocally a claims-made-and-reported policy, and the Policy's unambiguous language provides no coverage for the Claim.  (Doc.

36 at 7.)  The Policy Period expired on November 15, 2013; no notice of the Claim was provided until May 8, 2014.

In response, Banjosa asserts the Policy provision for reporting claims does not require that claims be reported by a specified date.  Therefore, the Policy does not function as a claims-made policy, regardless of how it is otherwise denominated in the Policy.  (Doc. 16 at 10-12).  The Policy language, in relevant part, is provided below.

The Declarations Page of the Policy states:

> **Please note that, except to such extent as may be provided otherwise, this insurance is limited to those claims that are first made against the Insured and reported to underwriters during the Policy Period. Please see the insuring agreements and also please review this insurance carefully and discuss the coverage provided by this insurance with your Insurance agent, broker, or representative.**

(Doc. 17-2 at 1; emphasis in original.)

The "About this Policy" portion of the policy states:

> **This is a Claims made and Reported Policy** in which Claim Expenses are included within the Limit of Liability unless otherwise noted. Please read the entire policy carefully and consult with your insurance broker or advisor.

(Doc. 17-2 at 20; emphasis added.)

Section I of the Policy, entitled "Insuring Agreement," states:

> Underwriters will pay on behalf of the Insured all Damages and Claim Expenses in excess of the Deductible and subject to the applicable Limit of Liability that the Insured becomes legally obligated to pay as a result of **any covered Claim that is first made against the Insured and reported in writing to Underwriters during the Policy Period or during any**

10

**properly exercised and applicable Extended Reporting Period**, for any Wrongful Act by the Insured or by anyone for whom the Insured is legally responsible, provided however that such Wrongful Act was committed or allegedly committed on or after the Retroactive Date set forth in Item 8. of the Declarations and further provided that the Insured had no knowledge of the actual or alleged Wrongful Act prior to the inception date of this Policy.

(*Id*; emphasis added.)

Section VIII. of the Policy, entitled "Conditions", states:

 A. Reporting of Claims

    1.  In the event a Claim is first made against any Insured, the Insured, as a condition precedent to any right to coverage under this Policy, shall:

        a.  give written notice to Underwriters of any such Claim as soon as practicable but in no event later than sixty (60) days after the end of the Policy Period or, if applicable during the Extended Reporting Period; or

        **b.  If the Insured receives any summons, arbitration demand, or notice of any legal, quasi-legal, or other adjudicatory or adversarial proceeding, provide immediate notice in writing to Underwriters of such receipt.**

(*Id.* at 26; emphasis added.)

Section B of the Policy, entitled "Notice of Potential Claims," provides:

 B. Notice of Potential Claims

If, during this Policy Period an Insured first becomes aware of a Wrongful Act to which this Insurance applies and which might subsequently give rise to a Claim, the Insured may give written notice to the Underwriters of a potential claim during the Policy Period.

If this notice is submitted to Underwriters during the Policy Period, then any Claim that is subsequently made against the Insured arising from the Wrongful Act about which notice was given to Underwriters shall be deemed for the purpose of this Policy to have been first made during the

> Policy Period. This provision shall not apply to, nor shall the reporting of potential claims be permitted during the Extended Reporting Period.

(*Id*. at 27.)

Banjosa focuses its argument on the language of "Section VIII, A.1.b." Banjosa asserts the language does not require the insured to report a legal proceeding within the Policy Period. (Doc. 16 at 10). Instead, Banjosa argues the language merely requires the insured to provide notice of any legal proceeding regardless of whether the Policy Period has expired. *Id*. Banjosa argues this language establishes that the Policy is not unambiguously a claims-made-and-reported policy, and therefore the Court must find HICI had a duty to defend Blumfield. (*Id*. at 12-13).

HICI counters by claiming the Policy unequivocally represents to be a claims-made-and-reported policy. (Doc. 26 at 8.) In support, HICI points to the plain language of the provisions recited above. It argues that reading the Policy language as advocated by Banjosa would render various other provisions meaningless, and leave "the making of claims requirement and the reporting of claims requirements open-ended and indefinite." (Doc. 26 at 7.) HICI argues that the Claim was first made and reported to HICI almost six months following the expiration of the Policy Period, unequivocally precluding coverage. (*Id*. at 10).

The Court agrees with HICI, and finds there is no need to engage in a nuanced reading of the Policy. HICI had a clear and unequivocal basis to deny coverage to Blumfield.

It is well established under Montana law that the interpretation of an insurance policy is a question of law. *Bailey v. State Farm Auto. Ins. Co.*, 300 P.3d 1149, 1153 (Mont. 2013); *see also Schleusner*, 102 F.Supp.3d 1148 (*citing Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 295 (Mont. 2008). Importantly, insurance policies are examined "as a whole, with no special deference to specific clauses." *Modroo*, 191 P.3d at 268. In addition, terms and words in an insurance policy are given their usual meaning and are construed using common sense. *Id.* A policy is only ambiguous if it is "reasonably subject to two different interpretations . . . 'from the viewpoint of a consumer with average intelligence, but untrained in the law or the insurance business.'" *Id.* (quoting *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 709 (Mont. 2003)).

Banjosa's interpretation of the Policy runs counter to these principles. Banjosa does not interpret the Policy as a whole, but rather focuses almost exclusively on the "Reporting of Claims" provision. In doing so, Banjosa confuses the Policy provisions on *when* a claim must be reported with *how* it is to be reported. The Reporting of Claims provision simply adds an additional condition to coverage, requiring an insured to provide prompt notice of a claim if it is first

13

made against the insured, and specifying how notice is to be given. The specific provision relied upon by Banjosa, pertaining to the receipt of legal process, does not purport to expand the coverage period in any manner. (Doc. 17-2 at 26, VIII.A.1.b.)

Upon examining the entire Policy, the clear language of the Policy specifies that a claim must be reported within the Policy Period. The Policy repeatedly denotes it is a claims-made-and-reported policy, and limits coverage to claims reported during the Policy Period. Reading the Policy as Banjosa urges would eliminate the claims-made-and-reported characteristic of the Policy. Under such a reading, a claim could be filed regardless of the Policy Period's duration, rendering the Policy Period meaningless and transforming the Policy into an occurrence policy. "The Court cannot rewrite the Policy." *Schleusner*, 102 F.Supp.3d at 1153 (finding that construing a claims-made-and-reported-policy in the light most favorable to the insured does not make a claim filed after the policy period ends timely, because doing so would turn the policy into an occurrence policy.)

Banjosa's interpretation would also render other provisions of the Policy meaningless, contrary to the principle that a policy's various parts should be interpreted to give each meaning and effect. *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014). For example, the Policy includes a provision concerning potential claims. The provision permits an insured the

opportunity to give notice of a potential claim which may be asserted in the future. If the claim is then subsequently made against the insured, it "shall be deemed for the purpose of this Policy to have first been made during the Policy Period." (Doc. 17-2 at 27.) This provision would be meaningless if the insured could simply provide notice of the claim when it is first made outside the Policy Period. Banjosa asks this Court to ignore the potential claim provision, as well as the various other provisions specifying the Policy as claims-made-and-reported policy, and instead accord special focus to the Reporting of Claims provision. The Montana Supreme Court has repeatedly refused to interpret insurance contracts under such a fragmented approach. *See Modroo*, 191 P.3d at 395 ("We examine insurance contracts as a whole, with no special deference to specific clauses."); *Mitchell*, 68 P.3d at 709 ("When we look at an insurance contract for purpose and intent we [will] examine the contract as a whole, giving no special deference to any specific clause.") (internal citation omitted); *Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998) ("we will read the insurance policy as a whole, and will if possible, reconcile its various parts to give each meaning and effect.").

Because the Claim was untimely, no coverage exists under the Policy, and no duty to defend was triggered. The clear language of the Policy must be

enforced as written. Additionally, because this Court has found the Policy clearly intends to exclude coverage, Banjosa's claim that Blumfield's reasonable expectations were violated also fails as a matter of law. *See Fisher v. State Farm Mut. Mobile Ins. Co.*, 305 P.3d 861, 867 (2013) (citing *American Family Mut. Ins. Co. v. Livengood*, 970 P.2d 1054, 1059 (1998) "the reasonable expectations doctrine is inapplicable where the terms of the policy at issue clearly demonstrate an intent to exclude coverage.").

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Banjosa's Motion for Summary Judgment (Doc. 15) be **DENIED,** and that HICI's Motion for Summary Judgment (Doc. 34) be **GRANTED.**

The Clerk is directed to enter judgment accordingly.

**IT IS ORDERED.**

DATED this 26th day of September, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge